**Virginia M. VANDERMARK and Barbara Handy, on behalf of themselves and all others similarly situated, Plaintiffs,**

·v.

**HOUSING AUTHORITY OF the CITY OF YORK, Marion L. Miller, in her capacity as Executive Director of the Housing Authority of the City of York, and the Department of Housing and Urban Development of the United States of America, Defendants.**

Civ. A. No. 79–1064.

United States District Court,
M. D. Pennsylvania.

June 23, 1980.

**360**

Stephen D. Converse, York, Pa., Kenneth R. Montgomery, Lancaster, Pa., G. David Pauline, Harrisburg, Pa., Central Pa. Legal Services, for plaintiffs.

David Schaumann, York, Pa., for Housing Authority & Marion L. Miller.

Carlon O'Malley, Jr., U. S. Atty., Harrisburg, Pa., for HUD.

## MEMORANDUM

RAMBO, District Judge.

The United States Housing Act (USHA) of 1937, as amended by § 201 et seq., of the Housing and Community Development Act of 1974, 42 U.S.C. § 1437 *et seq.*, provides for financial assistance from the federal government to state and local governments to remedy the unsafe and unsanitary housing conditions, as well as housing shortages, of low income families. Section 8 of the USHA of 1937, as amended, 42 U.S.C. § 1437f, authorizes the Secretary of Housing and Urban Development (HUD) to enter into annual contribution contracts with Public Housing Agencies (PHA), such as Defendant Housing Authority of the City of York, (YHA) who, in turn, may enter into contracts to make assistance payments to owners of existing projects on behalf of low income tenants. Every application submitted to HUD by a PHA must be accompanied by an administrative plan. Pursuant to 24 C.F.R. § 882.204(b)(3)(i) (1979), the administrative plan shall include:

a statement of the PHA's overall approach and objectives in administering the Existing Housing program; a description of the procedures to be used in carrying out each function; and a state-

ment of the number of employees proposed for the program, by position and functions to be performed.

Sub-section (b)(3)(ii) lists the functions that should be addressed in the administrative plan, which include outreach to eligible families, determination of family eligibility, and selection of families.

HUD regulations establish, *inter alia*, two criteria which must be met for an applicant to be considered eligible for assistance under the program: the applicant must qualify as a family (24 C.F.R. § 812.1, *et seq.* (1979)), and their annual income must fall within the designated income limits for the area. 24 C.F.R. § 889.101, *et seq.* (1979). The regulations further provide that a PHA may establish additional criteria in determining applicant eligibility for participation in the program subject to the provision that the criteria be reasonably related to program objectives and receive approval of HUD as part of the PHA's administrative plan. 24 C.F.R. § 882.209(a)(3) (1979).

Defendant YHA, as part of its criteria for determining eligibility to Section 8 housing, adopted a policy of denying participation in the housing assistance program to individuals who owe debts to the YHA arising out of their prior occupancy in YHA projects. The relevant portion of this policy statement, which is embodied in Section II(a)(4) of the statement, reads as follows: "Applicants who are former tenants of the Housing Authority and have vacated owing the Authority monies will not be considered eligible for participation until such monies are paid in full." This statement of policy was part of the YHA's administrative plan submitted to and approved by HUD and was in effect at the times in question.

When the housing authority determines that an applicant is eligible to participate in the Section 8 housing program, it issues a certificate of family participation. In the case *sub judice*, plaintiff Vandermark's application for a certificate of family participation was approved on January 3, 1978. She was notified to appear on January 12, 1979 for an enrollment interview. On January 5, 1979, Vandermark was advised that

her application was being withdrawn because she allegedly owed a debt of $194.30 to the YHA arising out of her occupancy of a YHA owned public housing unit in 1975. Plaintiff Handy applied to the Section 8 programs on December 22, 1978. Her name was placed on the waiting list but was withdrawn 14 days later when she was notified that a debt she allegedly owed to the YHA prevented her application from being processed.

The plaintiffs seek injunctive relief, a declaratory judgment, damages and such other equitable relief as the court may grant. The basis for their claim is fourfold:

1. That YHA's policy of excluding otherwise eligible families from Section 8 housing programs on the basis of alleged indebtedness to YHA violates the U. S. Housing Act and federal regulations governing the Section 8 program;

2. That HUD's approval of YHA's "indebtedness" policy constituted rule making without the benefit of the notice and publication procedures mandated by the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, and is, therefore, in violation of the APA and plaintiffs' right to due process of law.

3. That the "indebtedness" policy violates plaintiffs' right of substantive due process under the fourteenth amendment; and

4. That YHA's "indebtedness" policy violates plaintiffs' right to equal protection under the fourteenth amendment.

Defendants filed a motion to dismiss or in the alternative for summary judgment and plaintiffs filed a cross-motion for summary judgment.

In order to effect the stated purpose of providing low income housing under 42 U.S.C. §§ 1437 *et seq.*, Congress specifically recognized the need to vest the maximum amount of *power and responsibility* with the local public agencies 'to promote efficient management of the programs. This was expressly stated in 42 U.S.C. § 1437, encaptioned Declaration of Policy, which states in pertinent part: "It is the policy of

the United States . . . , to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." Consistent with this declaration of policy, HUD, through its regulations, vested in the local housing authorities the right to make reasonable policy decisions not specifically authorized in the USHA. Specifically, 24 C.F.R. § 882.209(f) (1979) provides, "If an applicant is determined by the PHA to be ineligible on the basis of income or family composition, *or for any other reason* . . ." (emphasis added). This provision clearly indicates that income and family composition were not to be the only criteria used in determining eligibility for Section 8 housing. Further, 24 C.F.R. § 882.204(b)(1)(i)(c) (1979) provides that an equal opportunity housing plan shall describe the PHA's policies and procedures for "Selecting among eligible applicants those to receive Certificates of Family Participation including *any provisions establishing local requirements for eligibility* or preferences for selection in accordance with § 882.209(a)(3)." (emphasis added).

■ The USHA also requires local authorities to develop sound and efficient management programs and practices to assure rental collection. (42 U.S.C. § 1437d(c)(4)(b). This policy of sound fiscal management is enunciated in 24 C.F.R. § 882.209(e)(1) (1979), which provides:

(1) If an assisted Family notifies the PHA that it wishes to obtain another certificate of Family Participation for the purpose of finding another dwelling unit within the area in which the PHA has determined that it is able to enter into Contracts or that it has found another such unit to which it wishes to move, the PHA shall . . . issue another Certificate . · . . *unless* the PHA determines that the Owner is entitled to payment pursuant to § 882.112 on account of non-payment of rent or other amount owed under the Lease and that the Family has failed to satisfy any such liability. (emphasis added).

Under 24 C.F.R. § 882.112(1979) the PHA is responsible to the landlord to pay any unpaid rents and other unpaid liabilities under the lease. The court concludes, therefore, that YHA's policy requiring applicants to pay their past debts owed to YHA is consistent with the above cited regulation and consistent with the overall policies of the Section 8 Housing Program.

Plaintiff's second contention is that HUD's approval of YHA's statement of policies, which contains the "indebtedness" eligibility requirement, constituted rulemaking by HUD without complying with the notice and hearing provisions of the Administrative Procedures Act (APA), 5 U.S.C. §§ 551 *et seq.* As a result, plaintiff alleges, the indebtedness eligibility requirement is without the force and effect of law.

■ The provisions of the APA were designed to "assure fairness and mature consideration of rules of general application" *N.L.R.B. v. Wyman-Gordon Company,* 394 U.S. 759, 764, 89 S.Ct. 1426, 1428, 22 L.Ed.2d 709 (1969). The procedures delineated in the APA must be followed when an agency exercises its legislative function else the rules will not have the force of law. *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3rd Cir. 1969). Before an activity becomes subject to the APA, however, it must indeed be rulemaking.

Rulemaking by an agency has been defined as involving "the promulgation of concrete proposals, declaring generally applicable policies binding upon the affected public generally, but not adjudicating the rights and obligations of the parties before it." *PBW Stock Exchange, Inc. v. Securities and Exchange Commission,* 485 F.2d 718, 732 (3rd Cir. 1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974).

Plaintiff argues that the fact that HUD has delegated the authority to create certain eligibility and preference requirements to the PHA's subject to subsequent HUD approval, is in effect nothing more than a ploy to circumvent the APA notice and hearing requirements regarding rulemaking. While plaintiff's argument has merit

in the abstract, it loses much out, if not all, of its persuasiveness as it pertains to this case.

As pointed out in the previous section, the policy behind low-income housing is to delegate the maximum amount of authority to the local housing authorities. To that end, HUD made provision for implementation of local requirements in determining eligibility and preferences. 24 C.F.R. §§ 882.204(b)(1)(i)(c) and 882.-209(a)(3)(1979). Taken in this context, HUD's delegation to the PHA's of establishing local eligibility and preference requirements is mandated so as to effectuate the underlying policy. HUD's review of the application to ensure conformity with its rules as well as the provisions establishing local requirements does not constitute rulemaking, but is merely implementing provisions previously and legitimately imposed by the local PHA's pursuant to HUD's rules that were unquestionably formulated in compliance with the APA. Hence, HUD's review of YHA "indebtedness" requirement regarding eligibility was not rulemaking; therefore compliance with the APA's notice and hearing requirements is not mandated.

Next, plaintiffs allege that the use of the existing unpaid back rent criteria is a denial of equal protection. Equal protection requires that persons similarly situated with respect to a challenged government action be treated similarly. *Reynolds v. Simms*, 377 U.S. 553, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Different treatment of persons similarly situated may be justified if it is reasonably related to an appropriate government interest. *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Malmed v. Thornburgh*, 621 F.2d 565 (3rd Cir. 1980).

YHA's criteria applies equally to all applicants. Furthermore, YHA's policy is reasonably related to an appropriate governmental interest; that interest being to foster fiscal responsibility in the administration of the Section 8 Existing Housing Programs, to ensure to landlords and the public the intent to administer a sound program, and to maintain a viable program providing maximum assistance to the largest amount of people.

Plaintiffs claim that the eligibility requirement in question should be declared invalid as violative of substantive due process because it is arbitrary, unreasonable, and unrelated to the purpose of the Section 8 program. Defendants contend YHA's "indebtedness" policy is neither arbitrary nor capricious. Both plaintiffs and defendants cite *Neddo v. Housing Authority of the City of Milwaukee*, 335 F.Supp. 1397 (E.D. Wis.1971) as supportive of their respective positions. In *Neddo*, the court had before it the specific issue of the local housing authority's right to reject applicants for public housing if past rent was owed. The court was "not willing to find that a policy [which] in an appropriate situation, denies admittance to an applicant who is in arrears of rent from a previous public housing occupancy does not serve some valid administrative purpose". (*Id.* at 1399). The court, however, did recognize that a citizen's right to participate in a public-aided, publicly supervised project can not be denied without an opportunity for an evidentiary hearing. Not only did the court in *Neddo* indicate that an evidentiary hearing was appropriate, it described the requisites of such a hearing as:

informal in the sense that no stenographic record is to be required nor need the witnesses be placed under oath. While the plaintiff shall not be required to appear with counsel, the housing authority should allow such representation at the plaintiff's request and at her own expense. The hearing shall be formal, however, in the sense that reasonable written notice of the time and place of the hearing must be afforded the plaintiff and that a written decision must be given to the plaintiff within a reasonable time after the hearing; the decision "should state the reasons for . . . [the] . . . determination and indicate the evidence . . . relied on . . . though . . . [the] . . . statement need not amount to a full opinion or

even formal findings of fact and conclusions of law. *Id.* at 1400, citing *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970).

The purpose for conducting such a detailed evidentiary hearing was to ensure that the applicant had the opportunity to discuss whether he could have paid the rent, can now pay the rent, or has had a change in circumstances establishing an ability to pay in the future. An automatic rejection based on the existence of the debt, coupled with a hearing that does not afford an applicant the opportunity to explain, is arbitrary and unreasonable. *Neddo, supra,* at 1400.

The record before the court does not disclose the details of the hearing nor does it indicate whether the plaintiffs were permitted to explain their reasons for not paying the rent due or changed circumstances in their financial ability to pay. All that is clear is that plaintiffs owed back rent and therefore were denied eligibility status, pursuant to YHA's policy on "indebtedness".

Accordingly, defendants' motion for summary judgment will be granted with respect to the claims contained in paragraph 43 of Count I, all claims in Count II, and all claims in Count III. Defendant's motion for summary judgment will be denied without prejudice as to paragraph 44 of Count I in that it is not clear the hearing afforded plaintiff's complied with due process requirements. Plaintiffs' cross-motion for summary judgment will be denied.