Dorothy A. KOHL, Plaintiff,

v.

HOUSING AUTHORITY OF the CITY OF BLOOMINGTON, ILLINOIS, et al., Defendants.

No. 80–3243.

United States District Court, C. D. Illinois, Springfield Division.

May 3, 1982.

Swarovski and Silver Crystal in order to obtain complete relief.

Gerald G. Kaluzny, John R. Porter, Jr., Bruce P. Bower, Bloomington, Ill., for plaintiff.

Steven M. Helm, Harry E. Stewart, Dukes, O'Rourke, Stewart & Martin, Danville, Ill., for defendants.

## ORDER

J. WALDO ACKERMAN, District Judge.

This case arises from a rental dispute between the plaintiff and the Bloomington Housing Authority (hereinafter referred to as BHA). It raises the question of the propriety of the BHA's establishing certain eligibility requirements before issuing a Certificate of Family Participation to applicants seeking housing under Section 201(a)(8) of the United States Housing and Development Act of 1974, 42 U.S.C. § 1437f (hereinafter referred to as "Section 8"). Three United States District Courts and the United States Courts of Appeal for the Third and Sixth Circuits have considered precisely this same issue, with differing results. It appears to be a matter of first impression in this Circuit.

The Section 8 Existing Housing Program is a program of federal rent subsidies for low income persons which is administered by local public housing authorities (hereinafter referred to as PHA). This legislation was enacted for the dual purpose of "aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing...." 42 U.S.C. § 1437f(a). Pursuant to this legislation, the PHA enters into an annual contributions contract (hereinafter referred to as ACC) with the Department of Housing and Urban Development (hereinafter referred to as HUD). 42 U.S.C. § 1437f(b)(1). The ACC gives the authority to the PHA to enter into housing assistance payments contracts with owners of existing dwelling units. *Id.* These contracts establish a maximum monthly rental for the unit, not to exceed the fair market

rental for such a unit by more than 10 per cent. 42 U.S.C. § 1437f(c)(1). Depending primarily upon family size and income, the monthly assistance payment is the difference between the maximum monthly rental and fifteen to thirty per cent of the family income. 42 U.S.C. § 1437f(c)(3). In other words, if a family qualifies for Section 8 housing assistance, a maximum of thirty per cent of its income will be used to pay rent. The rest is paid to the landlord by the PHA with federal funds.

Plaintiff Dorothy Kohl applied for a Certificate of Participation in the Section 8 program administered by the BHA. Her application was rejected because she allegedly owed rent on a conventional public housing unit. This debt arose from plaintiff's failure to give thirty days' written notice of termination of her lease to the BHA.

Plaintiff and her twelve-year-old daughter are both afflicted with multiple disabilities. Plaintiff leased an apartment from BHA on March 7, 1979, but never took possession. She became ill at the time she was to occupy the apartment and the apartment stairs were not manageable by her daughter, thus making the apartment unsuited to their needs. Although she was contacted twice about her intentions to either move in or return the key, Mrs. Kohl did neither until August 30 when she returned the key. At an informal hearing where she was represented by counsel, it was determined that plaintiff owed rent through July 20, the date on which BHA leased the apartment to a new tenant.

Plaintiff contends that to deny her the opportunity to participate in the Section 8 program because of an alleged rent arrearage owing to BHA from an unrelated housing program is unlawful because (1) it creates an additional condition of eligibility not authorized by Congress; (2) the use of the Section 8 program as a private collection device violates defendants' fiduciary duty to administer federal funds to aid lower income families in obtaining decent, safe, and sanitary dwellings, *i.e.* in a manner consistent with the Housing Act; and, (3) it

denies plaintiff equal protection of the law and violates her substantive due process rights.

Plaintiff's position is that the PHA may apply only the specific criteria for eligibility outlined in the HUD regulations. Those criteria relate primarily to family composition and income. *See* 24 C.F.R. § 889.101 (1981) *et seq.*; 24 C.F.R. § 882.102 (1981); and, 24 C.F.R. § 812.1 (1981) *et seq.* She contends that any additional criteria not specifically authorized by Congress are invalid.

Under the regulations, the PHA is to submit an equal opportunity housing plan to HUD no later than the time it submits the PHA-executed ACC. 24 C.F.R. § 882.-204(b)(1) (1981). That plan is supposed to describe the PHA's policies and procedures for, *inter alia*, "[S]electing among eligible applicants those to receive Certificates of Family Participation, including any provisions establishing local requirements for eligibility or preference for selection in accordance with § 882.209(a)(3)." 24 C.F.R. § 882.204(b)(1)(i)(C) (1981). Section 882.-209(a)(3) provides that a PHA may select families in accordance with its own HUD-approved rules for preferences. It further provides that "Requirements or preferences for those living in the jurisdiction of the PHA at the time of application are permissible" except that no requirement or preference may be based upon the location of the housing or upon length of residence in the jurisdiction of the PHA. Lastly, § 882.-209(f) delineates the procedures to be followed if an applicant is determined by the PHA to be ineligible "on the basis of Income or family composition, *or for any other reason....*" (Emphasis supplied).

■ Thus, the HUD regulations contemplate that the PHA may establish local eligibility requirements other than those prohibited by 24 C.F.R. § 882.209(a)(3) (1981), so long as the PHA's policies and procedures are submitted for HUD approval in its equal opportunity housing plan. The BHA's Equal Opportunity Housing Plan and Regulations which contain the rental arrearage policy were expressly approved by HUD on April 21, 1980.

Three other district courts have considered the issue of whether a PHA may require payment of arrearages before issuing a Section 8 certificate. In *Baker v. Cincinnati Metropolitan Housing Authority*, 490 F.Supp. 520 (S.D.Ohio 1980), the district court rejected arguments similar to those made by the plaintiff here. In that case, plaintiffs were denied Section 8 Certificates of Family Participation because of an arrearage resulting from prior tenancy in Cincinnati Metropolitan Housing Authority-owned public housing. *Id.* at 522. Plaintiffs argued there (1) that defendants' policies and practices conflicted with federal statutes and regulations; (2) that this practice violated equal protection and due process rights of the plaintiffs; and, (3) that defendants' acts constituted an unlawful collection practice. Plaintiffs also attacked as inadequate the procedures afforded to ineligible Section 8 applicants. Those procedures are not in issue here.

The court in *Baker* held that the policies and practices of the CMHA did not conflict with federal statutes, regulations, the ACC or Administrative Plan of the housing authority. *Id.* at 528. Furthermore, it held that there was a rational basis for excluding from the Section 8 program past CMHA residents who were in arrears. Such a policy would encourage assisted families to meet lawful obligations for rental payments, thereby maximizing effective use of available federal financial assistance to meet national housing goals. Consequently, the court held that the CMHA policy did not violate the Equal Protection Clause.

The court also rejected plaintiff's claim that CMHA's policy amounted to an illegal debt collection practice. It noted first that CMHA took no affirmative action to collect the arrearages. Furthermore, disputes about the appropriateness of the assessments could be handled at a hearing. Therefore, because a hearing would substantially diminish the likelihood of improper assessment of the past debt, the court found CMHA's policy did not constitute an illegal collection practice. *Id.* at 531.

The United States Court of Appeals for the Sixth Circuit recently affirmed the district court's judgment, holding, *inter alia*, that because the arrearage policy operated pursuant to fixed rules which provided adequate procedural safeguards, there was no danger of arbitrary application of the policy. *Baker v. Cincinnati Metropolitan Housing Authority*, 675 F.2d 836 at 841 (1982).

The court in *Vandermark v. York Housing Authority*, 492 F.Supp. 359 (M.D.Pa. 1980) also upheld the policy of a local housing authority to exclude applicants with arrearages owing to the authority from participating in the Section 8 program. This policy was embodied in the York Housing Authority's (hereinafter referred to as YHA) administrative plan which had been submitted to and approved by HUD. *Id.* at 361.

Plaintiffs claimed, *inter alia*, that YHA's policy of excluding families on the basis of alleged indebtedness to YHA violated the Federal Housing Act and regulations governing the Section 8 program, and that the policy violated their rights of substantive due process and equal protection under the Fourteenth Amendment. *Id.* The *Vandermark* court noted that Congress specifically recognized the necessity of granting the maximum amount of power and responsibility to the local housing agencies to promote efficient management of the program. *Id.* at 362. *See* 42 U.S.C. § 1437. Relying upon the regulations cited above, namely 24 C.F.R. §§ 882.209(f) and 882.204(b)(1)(i)(c) (1981), the Court found that consistent with the declaration of policy contained in 42 U.S.C. § 1437, HUD had vested in the local housing authorities the right to make reasonable policy decisions not specifically authorized in the Housing Act. *Id.* It found that the regulations clearly allowed the application of eligibility criteria other than income and family composition. *See also Ressler v. Landrieu*, 502 F.Supp. 324, 330 n.11 (D.Alas.1980), where the court rejected plaintiff's claim that decisions on eligibility for participation in a Section 8 program must be made solely on the basis of the applicant's income and family composition.

Additionally, the court found that PHAs are required to establish adequate procedures to assure prompt payment and collection of rents. *Id.* *See* 42 U.S.C. § 1437d(c)(4)(B). Indeed, under the regulations, if a Section 8 assisted family wishes to move and wants to obtain another Certificate of Participation, the PHA must deny the certificate if it determines that the family owes money to the owner for non-payment of rent or other liability under the lease. 24 C.F.R. § 882.209(e)(1) (1981).

As an inducement to owners to participate in the Section 8 program, the PHA is obligated to reimburse the owner for unpaid rent if a family vacates the unit owing money under the lease. 24 C.F.R. § 882.-112(d) (1981).[1] Accordingly, in light of the above cited regulations, the court concluded that YHA's policy of requiring payment of arrearages prior to issuance of a Certificate of Participation ·was consistent with the federal regulations and with the over-all policies of the Section 8 Housing Program. 492 F.Supp. at 392.

Furthermore, the court held that YHA's policy did not violate plaintiffs' rights under the equal protection clause.

YHA's criteria applies equally to all applicants. Furthermore, YHA's policy is reasonably related to an appropriate governmental interest; that interest being to foster fiscal responsibility in the administration of the Section 8 Existing Housing Programs, to ensure to landlords and the public the intent to administer a sound program, and to maintain a viable pro-gram providing maximum assistance to the largest amount of people.

492 F.Supp. at 363.

Finally, the court declined to find the policy violative of substantive due process. Although an automatic rejection based upon the existence of a debt, together with the failure to afford the applicant an opportunity to explain, would be arbitrary and unreasonable, a provision for a proper hearing would eliminate any arbitrariness. *Id.* at 364. In a later decision, the court held that since the hearings afforded plaintiffs the opportunity to explain their reasons for not paying the rent or to explain that conditions had changed so that they could now or in the future pay their rent, plaintiffs' due process rights were adequately protected. *Vandermark v. York Housing Authority,* 502 F.Supp. 574, 575–76 (M.D.Pa.1980). However, plaintiff in the case at bar has not challenged the procedures afforded to her in order to contest her exclusion from the Section 8 program, apparently because such procedures were not constitutionally defective.[2] She was represented by counsel, a written summary was made of the hearing, and she received written notice of the decision and reasons therefore.

The United States Court of Appeals for the Third Circuit recently affirmed the district court's decision in *Vandermark v. York Housing Authority,* 663 F.2d 436 (3d Cir. 1981). The court held that income and family composition are not necessarily the exclusive criteria to be used in determining eligibility for Section 8 housing, relying on 24 C.F.R. § 882.209(f), cited above. *Id.* at 439. Moreover, it recognized that the PHA

---

1. If the security deposit is insufficient to reimburse the Owner for the unpaid Family Contribution or other amounts which the Family owes under the Lease, or if the Owner did not collect a security deposit, the Owner may claim reimbursement from the PHA for an amount not to exceed the lesser of: (1) The amount owed the Owner, or (2) two months' Contract Rent; minus, in either case, the greater of the security deposit actually collected or the amount of security deposit the Owner could have collected under the program...." 24 C.F.R. § 882.112(d) (1981).

2. A certified tenant in Section 8 programs has a property interest protected by the due process clause. *Holbrook v. Pitt,* 643 F.2d 1261, 1276–78 (7th Cir. 1981). At least one district court has held that due process protection extends to *applicants* for Section 8 programs who have not been certified. *Ressler v. Landrieu,* 502 ·F.Supp. 324 (D.Alas.1980). In *Holbrook v. Pitt,* 643 F.2d 1261, 1278–79 (7th Cir. 1981), the court specifically refused to express an opinion on the district court's holding that non-certified tenants do not have a legitimate claim of entitlement to Section 8 benefits under the due process clause, while noting the *Ressler* decision, *contra.*

has a clear fiscal and management interest in ensuring that debts owed to it by Section 8 applicants are paid prior to issuance of participatory certificates. *Id.* at 440. In sum, the court found the policy of requiring payment of past debts to the housing authority to be consistent with the federal regulations and the overall policies of the Section 8 housing program. *Id.* The court also approved the district court's holding that the policy did not violate the equal protection clause, finding that the policy rationally furthered the interests delineated by the district court.

Plaintiff does cite a district court decision favorable to her position. In *Ferguson v. Metropolitan Development and Housing Agency*, 485 F.Supp. 517 (M.D.Tenn.1980), the court found defendants' policy of excluding persons with arrearages owing to the Metropolitan Development and Housing Agency (hereinafter referred to as MDHA) to be an unauthorized collection practice, "precluding from the program people who have had trouble paying rent, who are the very persons whom the Section 8 program was intended to help." 485 F.Supp. at 524. It held that the defendants' policy violated the stated purpose of the statutes, regulations and legislative history creating the program. *Id.*

Moreover, the *Ferguson* court thought the criterion outlined in the legislative history, *i.e.* income ceilings, to be exclusive and a limit on the discretion of state agencies in deciding who may participate in the Section 8 program. It found support for its determination in Section 2.2 of the ACC which stated: "The PHA shall use the Annual Contribution solely for the purpose of providing Decent, Safe, and Sanitary dwellings for Families in compliance with all applicable provisions of the Act and all regulations issued pursuant thereto . . ." An identical provision appears in the BHA's ACC and plaintiff here relies on that section to show that defendants have breached the ACC by adopting the "indebtedness" exclusionary policy.

■ However, I interpret this section of the ACC differently. It obligates the PHA to use the federal assistance to provide *housing* for *eligible* families. The PHA is not authorized to divert federal funds into other programs with which it may be concerned; *e.g.* housing for families of low income but not low enough to qualify for Section 8 assistance per se. Or, if the PHA could assist families in ways other than housing, it could not do so with Section 8 funds. Thus, I find no conflict between the ACC and BHA's policy.

■ Plaintiff also contends that assistance may be terminated to a tenant if the family fails to comply with its obligations under the certificate of participation. The certificate, plaintiff argues, only obligates a family to:

(a) provide such Family income information and records as may be required in the administration of the program; (b) permit inspection of its dwelling unit at reasonable times after reasonable advance notice; and, (c) give at least 30 days notice to the Agency of the Family's intention to vacate the unit.

Thus, plaintiff asserts that since no other obligations are set forth in the regulations, no other conditions of eligibility are permissible. The *Ferguson* court adopted this approach. 485 F.Supp. at 525. However, this argument must fail. These obligations accrue to a family once it has been issued a certificate of participation. This occurs after an eligibility determination for participation in the program has been made. The obligations owed once a certificate issues have no connection with the initial eligibility determination.

■ I have examined the regulations involved and the available legal precedents and am persuaded that BHA's policy does not violate the statute, regulations or constitutional rights of the plaintiffs, as a class. The rationale employed by the *Vandermark* court in particular appears to be the correct interpretation of the applicable law. This Court, therefore, declines to find that a local housing authority may not deny participation in a Section 8 program to a family with arrearages owing to the authority. Plaintiffs' motion for summary judgment is denied.

Although relief is not forthcoming for the class, I find that BHA's decision to deny plaintiff Dorothy Kohl a Section 8 Certificate of Participation was arbitrary. Defendants admit that she is a desirable tenant who has always paid her rent and fulfilled her obligations to the BHA in the past. As previously stated, the arrearage policy is reasonably related to, *inter alia*, an appropriate governmental interest in fostering fiscal responsibility in the administration of the Section 8 program. Plaintiff Kohl poses no threat to that fiscal responsibility; in fact, she has been a model tenant in the past. She has located a landlord willing to lease an appropriate dwelling to her and her daughter and currently occupies that apartment. The rental arrearage policy as applied to plaintiff Kohl is being used solely as a collection device to ensure payment of a good faith disputed obligation. Accordingly, the terms of the preliminary injunction granted solely as to plaintiff Kohl shall be made permanent.