Joyce JAMES, on behalf of herself and all others similarly situated, Plaintiffs,

Kenneth Clarke, on behalf of himself and all others similarly situated,

v.

The NEW YORK CITY HOUSING AUTHORITY; Joseph Christian, as Chairman of the New York City Housing Authority; Blanca Cedeno, as a Member of the New York City Housing Authority; and Walter S. Fried, as a Member of the New York City Housing Authority, Defendants.

No. 81 Civ. 6458 (RLC).

United States District Court, S.D. New York.

Nov. 15, 1985.

Kalman Finkel, Legal Aid Society, Civ. Div., John E. Kirklin, Director of Litigation, Civil Appeals & Law Reform Unit, Conrad A. Johnson, Harlem Neighborhood Office, New York City, for plaintiffs; Scott A. Rosenberg, Dianne Dixon, New York City, of counsel.

Charles E. Williams, III, Gen. Counsel, New York City, for defendants; A. Joaquin Yordan, New York City, of counsel.

OPINION.

ROBERT L. CARTER, District Judge.

Despite numerous conferences between opposing parties, and stipulations by the parties as to undisputed material facts and damages caused to plaintiffs by application of defendants' challenged policy, the parties have failed to settle this case out of court. Thus, this matter—dating back to 1982—is again before the court on the parties' 1982 cross-motions for summary judgment. Since the parties are unable to resolve their dispute, the court must dispose of these pending motions.

On October 3, 1983, the court certified a class including all applicants of public housing whose applications had been denied or would be denied or deferred by the New York City Housing Authority [the "Author-

ity"] on the basis of the duration of the applicant's family composition. Plaintiffs' motion for summary judgment challenges the defendant Authority's administrative policy of imposing two *per se* rules—one, a six-month, the other, a one-year, duration-of-family requirement—on all applicants of public housing. Plaintiffs maintain that both of these duration-of-family requirements preclude an individualized assessment of relevant family composition to determine "stability" and ignore the immediacy or importance of an applicant's need for housing. Plaintiffs contend that these policies impose unauthorized eligibility requirements, violative of the United States Housing Act, 42 U.S.C. § 1437 *et seq.*, its implementing regulations, the due process and equal protection clauses of the 14th Amendment, and the rights to privacy and free association, protected by the first, fourteenth, and fifth amendments to the Constitution of the United States.

Defendants, the Authority and its various officials, have cross-moved for summary judgment, contending that Congressional policy regarding low-income housing vests local public housing agencies with the maximum amount of responsibility in administering housing programs. Defendants assert that the Authority's requirement that an applicant for public housing have a stable family composition is rationally related to such neutral, and vitally important considerations as an applicant's financial eligibility, appropriate apartment size, and the peaceable occupancy of the public housing tenant body.

**FACTS**

In order to qualify for public housing, applicants must satisfy a variety of stringent eligibility standards. Applicants must comport with requirements pertaining to income, assets, rent-paying record, housing need, and standards concerning past criminal or violent behavior. (*NYCHA Management Manual ch. III(V)* at 15–41). In addition to these eligibility standards, the Authority requires that public housing applicants verify the stability of their family "composition," or membership. (*NYCHA*

*Management Manual, ch. III, "Tenant Selection"* (Revised June 1, 1969)). The two *per se* rules regarding family composition challenged here are allegedly used to determine if "the history and cohesiveness of the members constituting the family," are such that "a reasonably definitive determination can be made regarding persons who will be residing in the apartment." (*NYCHA Management Manual, ch. III(V)(B)(1)*, at 16).

Applicants, who are living apart from an unrelated adult or family member but who seek to unite in an Authority apartment with that adult or family member, are automatically disqualified for public housing by reason of "unverifiable family composition" unless and until they live together for one year before their application is filed. (*Joint Pretrial Order* ¶ 74). Conversely, applicants who are living with an unrelated adult or family member, are automatically disqualified for public housing by reason of "unverifiable family composition" until they live apart for at least six months. The first of these policies admits of no exceptions. (*See Lehman Deposition* at 19), annexed as Exh. C to the *Affidavit of Jean T. Schneider in Support of Plaintiff's Motion for Summary Judgment* ("*Schneider Affidavit*"). The sole exception to the latter policy occurs when an unrelated adult or family member leaves the household by reason of death, incarceration, or marriage to a third party. (*See Lehman Deposition* at 21, *Schneider Affidavit*, Exh. D).

The first named plaintiff in this action is Joyce James. James applied for an Authority apartment in November, 1979. At that time she was eight months pregnant with her first child. She did not apply for an Authority apartment with the father of her child, Barry Douglas, as she informed the defendants that Douglas abused her both verbally and physically. (Plaintiffs' Exh. 2 to Deposition of Hilda P. Merle (Request for Reconsideration of Status of Joyce James (Nov. 12, 1981)). The parties have stipulated that James and Douglas "were not able to get along together," and

that James "could not find an apartment on the private market which she could afford to rent." (*Joint Pretrial Order* ¶¶ 22–23). After the birth of her first child, James learned that her application had been denied because of "unstable family composition," i.e., she and Douglas had not yet lived apart for six months to one year. In October, 1981, after the birth of her second child, James and her children left Douglas' apartment and moved into plaintiff's sister's apartment, where they slept on the floor as the apartment was too small to house two adults and three children. In October, 1982—a full year after James left Douglas' apartment—the Authority accepted James' application for public housing. The parties have stipulated that the sole ground for the Authority's denial of her application was that "Ms. James had not yet lived apart from Mr. Douglas for six months to one year." (*Joint Pretrial Order* ¶¶ 67–68).

On October 3, 1983, the court permitted Kenneth Clarke to intervene as a plaintiff in this action, pursuant to Rule 24, F.R. Civ.P. From the summer of 1982, until December, 1982, Clarke lived in an apartment with Peggy Jackson, in whose name the apartment was rented. From the end of December, 1982, until March, 1983, Clark remained at the apartment alone. Intervenor Clarke became homeless in March, 1983, as a result of a building fire. The Division of Relocation Services, a division of the New York City Department of Housing Preservation and Development, became responsible for providing him with emergency shelter and for helping him find new permanent housing. In March, the Division submitted an application to the Authority on his behalf for public housing. Clarke suffers from a total disability; the Social Security Administration has determined that he is unable to engage in any substantial activity. His only source of income is Social Security disability benefits of $247.00 per month. On May 9, 1983, the Authority denied Clarke's application for public housing on the ground of "unverifiable family composition." The sole reason for the Authority's denial was its finding that Clarke had not lived apart from Jackson for at least six months. (*Joint Pretrial Order* ¶ 67–68). Clarke, as a consequence of the Authority's policy, remained an "emergency relocatee," repeatedly shuttled among hotel rooms provided by the Department of Housing Preservation and Development.

Public housing applications of other members of the class have been similarly denied on the ground of unverifiable family composition, without regard for any good faith reasons for changes in family composition or inability to prove compliance with the required family duration period, and without concern for the feasibility of altering family relationships for six months to one year. Depositions of Authority officials reveal that 70% of the deferral notices for public housing applications, which are sent out by the Eligibility Division of the Authority, cite to a problem with the duration of the applicant's family composition, which is expected to be resolved by the passage of time. (*See Lehman Deposition* at 3, *Schneider Affidavit*, Exh. A).

## DISCUSSION

### I. Summary Judgment

#### A. No Material Issues of Fact

Summary Judgment may be granted only where "the pleadings [and] depositions ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P. The movant has the burden of showing that there are no genuine issues of material fact. *Burtnieks v. City of New York*, 716 F.2d 982 (2d Cir. 1983); *First National Bank of Cincinnati v. Pepper*, 454 F.2d 626 (2d Cir.1972); C. Wright & A. Miller, *Federal Practice & Procedure*, Civil § 2727 (1983 ed.). Here the facts are not in dispute. Both plaintiffs and defendants have annexed to their motions for summary judgment a Rule 3(g) statement in which the moving parties contend there are no genuine issues to be

tried.[1] Thus, summary judgment is appropriate. Furthermore, the parties have stipulated the amount of damages suffered by named plaintiffs, James and Clarke, if the duration-of-family-requirement is found to be an invalid policy.

### B. Statutory Issues

#### (1) The United States Housing Act Establishes a National Housing Policy

The United States Housing Act, 42 U.S.C. § 1437 *et seq.*, establishes a program of financial aid from the federal government to state and local governments engaged in providing decent housing to low-income families who cannot obtain safe and sanitary housing on the private market. The basic purpose of the Act is:

> [T]o assist the several States ... to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income.

42 U.S.C. § 1437.

The United States Housing Act is a program of "cooperative federalism." *Fletcher v. Housing Authority of Louisville*, 491 F.2d 793 (6th Cir.), *rev'd and remanded on other grounds*, 419 U.S. 812, 95 S.Ct. 27, 42 L.Ed.2d 39 (1974), *reinstated*, 525 F.2d 532 (6th Cir.1975). When federal money is spent to promote the general welfare, the concept of welfare is shaped by Congress, not by the states. *Helvering v. Davis*, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937). The expression of federal policy in the area of low-income housing is the United States Housing Act. So long as the Authority operates under an annual contribution contract with the Department of Housing and Urban Development ("HUD"), it must meet the requirements of the United States Housing Act. It may not set eligibility criteria unauthorized by Congress which exclude from coverage persons who are eligible under federal statutes. *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Despite defendants' contention that "the Authority has been vested by the Federal Government with the maximum amount of responsibility in the administration of its housing program," (Pretrial Order at 3), the underlying policy of the United States Housing Act is to provide low-income housing to eligible applicants, not to vest arbitrary maximum power in the states. Hence, the Authority's mandatory duration-of-family composition requirements must be analyzed in light of the purposes of the United States Housing Act and with regard to federal regulations governing tenant selection policies of local housing authorities.

#### (2) HUD regulations establish goals for local housing authorities' tenant selection policies and procedures

HUD regulations require local public housing authorities to design tenant selection policies and procedure that:

1. Avoid concentrations of the most economically and socially deprived families in any one or all of the PHA's public housing projects;

2. Preclude admission of applicants whose habits and practices reasonably may be expected to have a detrimental effect on the tenants or the project environment.

3. [A]ttain, within a reasonable period of time, a tenant body in each project

---

1. Although plaintiffs' April, 1982 *Reply Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment* purports to contest a number of allegations set forth in defendants' 3(g) statement, the only alleged material fact in dispute is the parties' characterization of plaintiffs' ineligibility for public housing. Defendants contend that named plaintiffs were unable to verify their family composition; whereas, plaintiffs assert that they were denied public housing because they failed to meet the Authority's duration-of-family requirements. Since the validity of the Authority's equating a "verified family composition" with its inflexible durational formula is the very legal issue to be determined in this action, there is no disagreement as to any material facts.

composed of families with a broad range of incomes and rent-paying ability that is generally representative of the range of incomes of lower income families in the PHA's area of operation, as defined in State law.

24 C.F.R. § 960.204.

The court agrees with plaintiffs that the Authority's mandatory duration-of-family composition requirements serve none of the three policy goals outlined in HUD regulation, 24 C.F.R. § 960.204. The Authority's ironclad family duration requirements do not prevent a concentration of the most economically deprived families, or eliminate applicants whose presence could be detrimental to housing projects, or help establish a broad diversified tenant body. This does not resolve the matter, however, since the Authority may promulgate tenant selection criteria not expressly authorized by § 960.204, except that such local rules are valid only if not in conflict with relevant HUD regulations. We now proceed to examine the Authority's criteria at issue here to determine whether they conflict with § 960.204.

### (3) HUD regulations disapprove of categorical denials of admission to public housing

Plaintiffs assert that HUD, in implementing the United States Housing Act, has promulgated regulations that prohibit categorical selection criteria based on duration of household membership. HUD regulations declare that tenant selection criteria, policies and procedures shall "not automatically deny admission to a particular group or category of otherwise eligible applicants (e.g. unwed mothers or families with children born out of wedlock)" 24 C.F.R. § 960.204(c)(1). This prohibition of such automatic rules is also a function of HUD regulation, 24 C.F.R. § 960.205(a):

The criteria to be established and information to be considered shall be reasonably related to individual attributes and behavior of an applicant and shall not be related to those which may be imputed to a particular group or category of persons of which an applicant may be a member.

Clearly, these HUD regulations forbid locally adopted broad categorical limitations on eligibility which undermine the federal statutory purpose of providing housing for needy families otherwise eligible under federal law.

Furthermore, HUD regulations suggest that local authorities investigate applicants' specific habits or practices in present or prior public housing, such as:

(1) An applicant's past performance in meeting financial obligations, especially rent;

(2) A record of disturbance of neighbors, destruction of property, or living or housekeeping habits at prior residences which may adversely affect the health, safety or welfare of other tenants; and

(3) A history of criminal activity involving crimes of physical violence to persons or property and other criminal acts which would adversely affect the health, safety or welfare of other tenants.

24 C.F.R. § 960.205(b)(1)(2)(3). Unlike an applicant's financial or criminal history which certainly relates to an applicant's individual attributes, defendants' six-month to one-year family duration rules have no necessary nexus to any particular attribute or behavior of an applicant. Although the six-month and one-year family· durational requirements may screen out some fraudulent family units, not all persons who fail to meet the durational requirements belong to sham or fabricated family units.

Plaintiff James, a mother of two young children, a battered victim of verbal and physical abuse by the father of her children and a recipient of public welfare, may have had a bona fide wish to establish a family unit without the father of her two children, but was unable to afford private sector housing which would have enabled her to meet the Authority's six-month durational requirement. A similar inability to establish a separate residence for six-months befell disabled intervenor Clarke.

The Authority's rules disregard all bona fide evidence submitted as proof of family composition. Thus, the Authority deemed irrelevant Douglas' sworn affidavit that he did not intend to, and would not, reside with James in an Authority apartment. (*Plaintiffs' Supplemental Memorandum of Law in Support of Their Motion for Summary Judgment*, p. 20). By automatically denying admission to applicants who fail to meet the durational family composition requirements without affording individual consideration of the feasibility of establishing six-months or one year of stable family composition, the criteria are not "reasonably related to individual attributes and behavior," and thus violate 24 C.F.R. § 960.204(c)(1) and § 960.205(a) (1984).

### (4) Courts view categorical eligibility limitations with disfavor

■ There is a strong judicial presumption against the validity of categorical eligibility limitations not expressly authorized under federal welfare legislation. In *Carleson v. Remillard, supra* 406 U.S. at 602, 92 S.Ct. at 1935, the United States Supreme Court invalidated California welfare regulations which excluded so-called "military orphans" from benefits under the Social Security Act program of aid to families with dependent children, explaining,

> We search the [Social Security] Act in vain ... for any authority to make "continued absence" into an accordion-like concept, applicable to some parents because of "continued absence" [of parent from house] but not to others.

This circuit has in the past condemned automatic exclusions not explicitly allowed by a federal act or its implementing regulations in circumstances similar to these. In *Davis v. Smith*, 431 F.Supp. 1206, (S.D.N. Y.1977) (Tenney, J.) *aff'd* 607 F.2d 535 (2d Cir.1978), Judge Tenney held that the Social Security Act contemplated utility shutoffs as appropriate for emergency assistance, and that a state plan which automatically denied all requests for emergency assistance when these funds were to be used to pay utility bills contravened the mandate of the Social Security Act. Although recognizing the state's concern over the difference between "unexpected and irregular" utility expenses versus anticipated expenses of daily life, the court held, "[a] participant state cannot automatically exclude from eligibility for emergency assistance under its plan a category of need which is contemplated by the federal program." 431 F.Supp. at 1213. Moreover, the Second Circuit affirmed by noting that Congress appears, "to have contemplated particularized scrutiny of individual cases to determine whether the recipient is in an emergency situation or whether the crisis is of his own making. *While the details of such determinations necessarily must be left largely to the discretion of the states, ..., reasoned determinations must be made.*" (emphasis supplied) 607 F.2d at 539.

The statutory basis under the Social Security Act for prohibiting automatic denials in *Davis* was implicit only; in the present case, the regulatory prohibitions of automatic denials of public housing under 24 C.F.R. part 960, are, in contrast, direct and explicit. Accordingly, the local regulation must fall. For example, in *Hess v. Ward*, 497 F.Supp. 786 (D.C.Pa.1980), the district court held that certain HUD regulations forbade the local housing authority from treating applicants who lived within its jurisdiction differently solely on the basis of whether they were residents of the municipality in which housing was located. 24 C.F.R. § 960.204(e). In the same vein, the Sixth Circuit in *Fletcher v. Housing Authority of Louisville*, 491 F.2d 793, 804 (6th Cir.1974), held that the city housing authority's institution of a rent range formula, which allocated apartments available under a federally funded housing program so as to ensure accelerated entry of higher rent-paying applicants over other applicants, violated the National Housing Act's provision requiring local housing agencies to give "full consideration" to the basic criterion of housing need. 42 U.S.C. § 1410(g)(2).

HUD's delegation of eligibility requirements to local public housing authorities is

intended to effectuate the underlying policy of the United States Housing Act by promoting efficient management of the programs; however, here, the Authority's two *per se* rules may promote efficient management, but frustrate rather than aid the implementation of the federal act. The Authority's policies operate automatically to deny eligibility to otherwise qualified applicants without regard for their individual characteristics, and without opportunity to rebut the denial. Thus, they are violative of 24 C.F.R. §§ 960.204(c)(1) and 960.-205(a) 1984.

**(5) Defendants fail to cite statutes, regulations or case law in support of Defendants' Motion for Summary Judgment**

The only case defendants cite in support of the statutory basis for their motion for summary judgment is *Vandermark v. Housing Authority of the City of York,* 492 F.Supp. 359 (M.D.Pa.1980), *aff'd* 663 F.2d 436 (3d Cir.1981). In that case the district court reiterated the undisputed proposition that Congress, under the United States Housing Act, granted local public housing authorities maximum power and responsibility "in the administration of their housing programs." 42 U.S.C. § 1437.

But defendants fail to note that *Vandermark* is distinguishable from the present case in at least two important ways. First, HUD regulations explicitly suggest that local authorities, in determining applicant eligibility, consider an applicant's past performance in meeting financial obligations, especially rent payments in public housing, 24 C.F.R. § 960.205(b)(1), the matter at issue in *Vandermark.* In contrast, HUD regulations make no reference to the duration of the applicant's family unit, and explicitly forbid any categorical limitations on eligibility. Indeed, 24 C.F.R. § 960.204(a) expressly requires local authorities to examine specific family situations: "each PHA shall adopt and implement policies and procedures embodying standards and criteria for tenant selection which take into consideration the needs of individual families for public housing." Second, although the court in *Vandermark* recognized Congress' grant of power to local authorities to make reasonable policy decisions not specifically authorized in the United States Housing Act, the court required the housing authority to demonstrate that rejected applicants had a hearing which comported with due process:

> An automatic rejection based on the existence of the debt, coupled with a hearing that does not afford an applicant the opportunity to explain, is arbitrary and unreasonable ... plaintiffs [must be] permitted to explain their reasons for not paying the rent due or changed circumstances in their financial ability to pay.

492 F.Supp. 359 at 364.

The district court in *Vandermark* subsequently found that the hearing procedures did afford plaintiffs an opportunity to explain their reasons for not paying the rent. *Vandermark v. Housing Authority of City of York,* 502 F.Supp. 574, 575–76 (1980). Yet, in the instant case, the Authority's inexorable rules do not permit explanations for why the six-month or one-year family durational requirement is not feasible or ascertainable. Plaintiffs accurately describe the futility of the hearing:

> The Authority has adopted durational requirements for family composition that negate the purpose of the hearing for many public-housing applicants. These applicants march up the hill and then march back again: they offer proof of their family composition, only to be told that a mandatory presumption adopted by the Authority disables them from verifying that composition.

(*Plaintiffs' Brief,* p. 23).

**(6) Local housing authorities cannot abuse their discretion in adopting standards for the allocation of housing.**

This circuit in *Holmes v. New York City Housing Authority,* 398 F.2d 262, 264 (2d Cir.1968), warned against local authorities' abuse of discretion in adopting standards for the allocation of public housing. In

*Holmes*, applicants for public housing raised due process objections to the admission policies and practices of the Authority, citing numerous deficiencies in the admissions' policy: namely, regulations on admissions were unavailable to prospective tenants, applications were not processed chronologically, or in accordance with ascertainable standards, and all applications expired automatically at the end of two years. The Second Circuit held that although Congress had given the local housing authority control over tenant admissions' policy, plaintiffs had standing to raise due process claims since "plaintiffs assert a narrow group of constitutional rights based upon overriding federal policies, and ask federal involvement only to the limited extent necessary to assure that state administrative procedures comply with federal standards of due process." *Id.* at 266. In *Fletcher, supra* at 800, the Sixth Circuit pointed to the United States Housing Act as the lodestar for review of the Louisville Housing Authority's rent-range formula for allocating public housing among eligible applicants, stating, "Given that HAL's ["Housing Authority of Louisville"] rent range formula discriminates against a group of applicants and that HAL's Resolution must be tested under the National Housing Act, we can uphold the rent range Resolution only if it is reasonable and is consistent with the Act." Accordingly, despite defendant's incantation of its authority to devise eligibility standards under the federal housing act, clearly it is a question of law for this court to determine whether the Authority's administrative policy regarding family duration is reasonable and accords with its statutory foundation.

### (7) Congress and HUD have not relinquished their authority over low-income housing programs

Despite defendants' focus on the power of local authorities to devise their own eligibility standards, plaintiffs are correct to argue that Congress and HUD have not abdicated their roles in promoting low-income housing. This court has held that the mere incantation by local housing authorities of the National Housing Act's broad declaration of policy of allowing local authorities' maximum control over federally financed housing projects does not entitle the Authority to create eligibility criteria more restrictive than those established in the Act and its implementing regulations. *Braxton v. Poughkeepsie Housing Authority*, 382 F.Supp. 992 (S.D.N.Y.1974) (Metzner, J.) (City housing authority could not fail to comply with directives of HUD circulars pertaining to rules and regulations concerning federally assisted public housing tenants on ground that an administrative morass would result). *See also Thorpe v. Housing Authority of Durham, N.C.*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) (Supreme Court determined that HUD circulars directing that no tenant of federally assisted housing projects be evicted prior to notification of reasons for eviction and without opportunity to reply to those reasons did not violate Congressional policy of allowing local authorities to retain maximum control over the administration of federally financed housing projects).

In sum, the evident aim of the Authority's challenged policy is to prevent fraud, i.e. applicants residing in households without recent changes in family composition are presumed less likely than their counterparts in fluid households to reside in Authority apartments with family members not listed on their applications. Yet, affidavits submitted by both sides show that the challenged policy is unnecessary to accomplish the Authority's legitimate goal of making a reasonably definitive determination regarding people who will be residing in the apartment. Fraud in public housing tenancy may be detected and prevented by more narrow individualized means than honing in on a single characteristic—family duration—so tenuously related to fraud. Indeed, the parties have stipulated that the

> Authority has means available to it to verify who is living in the apartments in its public housing projects. The Authority employs these means in its annual verification of the family composition of

**1364**

its tenants and as a means of determining whether unauthorized persons occupy the apartments.

(*Joint Pretrial Order* 75.)

According to the deposition testimony of Authority official Ruth Nabbie, housing assistants are expected to make yearly inspections. Authority employees investigate reports of unauthorized occupants. And employees are regularly on the premises of Authority projects. (*See Lehman and Nabbie deposition* at 59–60.)

■ It is beyond the proper exercise of judicial authority for this court to attempt to rewrite the Authority's tenant selection rules regarding family composition. The court finds defendants' mandatory duration of family requirements to be in violation of the United States Housing Act and its implementing regulations, and hence grants plaintiff's motion for summary judgment and denies defendants' motion for summary judgment.

### C. Constitutional Claims

Having found that plaintiffs state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1401, *et seq.*, it is unnecessary to reach plaintiffs' constitutional claims. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

### II. Damages Due to Authority's Challenged Policy

The parties have stipulated that the damages caused by the application of the family duration policy to James are equal to $3,500. The parties have further stipulated that as a consequence of the application of the Authority's family duration policy to Clarke, Clarke suffered damages equal to $500.00. *(Stipulation of Undisputed Facts Pertaining to Damages.)* An award of judgment in the amount of $3,500 to James, and an award of judgment of $500.00 to Clarke are ordered. Plaintiffs are to recover their costs.

IT IS SO ORDERED.