Cindy HANN and James Webster

v.

HOUSING AUTHORITY OF the CITY OF EASTON, et al.

Civ. A. No. 87–5278.

United States District Court, E.D. Pennsylvania.

March 27, 1989.

Anne P. Felker, Jeffrey L. Greenwald, Lehigh Valley Legal Services, Inc., Easton, Pa., for plaintiffs.

J. Stephen Kreglow, Easton, Pa., for defendants.

## MEMORANDUM

CAHN, District Judge.

■ The question before the court is whether a local housing authority can deny an application for low-income housing assistance solely on the basis that the applicants are unmarried. I find that this practice is in conflict with the purposes of the United States Housing Act of 1937 ("USHA"), as amended, 42 U.S.C. § 1437f, and the regulations promulgated by the Department of Housing and Urban Development ("HUD") to effectuate the Act.[1]

### FACTS

The plaintiffs, Cindy Hann and James Webster, are unmarried but are the natural parents of three children. The Housing Authority of the City of Easton ("HACE") is a state-chartered public housing agency as defined in 42 U.S.C. § 1437a(b)(6). HACE owns and operates low-income housing units as well as administers the Section 8 program for the City of Easton, Pennsylvania. Defendant Gary A. Smith is the Executive Director of HACE, and Defendant Catherine Benton is the Coordinator of the Section 8 program at HACE.

Under Section 8 of USHA, HUD enters into annual contribution contracts with Public Housing Agencies ("PHAs"), and the PHAs then subsidize the rent payments of low-income tenants. The PHAs are responsible for determining whether applicants are eligible for participation in the program. PHAs examine the financial eligibility and family status of applicants. Eligible applicants are issued either a Certificate of Family Participation or a Voucher. Once eligibility has been established and a Voucher or Certificate issued, the selection of tenants is left to individual landlords.

Hann and Webster were living together with their two minor children, ages four and one respectively,[2] when they and all the tenants in their apartment complex were given notices of eviction. Defendant Benton announced at a public meeting that HACE had procured authority from HUD to issue housing vouchers to eligible applicants who were going to be displaced by the mass eviction. The plaintiffs applied for assistance, but their application was rejected because HACE stated that "our Authority does not accept common-law relationships." Under a resolution passed by HACE's Board of Commissioners, HACE interprets the term "family" as used in USHA and HUD regulations to mean "two or more persons who will live together in the dwelling and are related by blood, marriage or adoption." Since Hann and Webster were not married, HACE refused to acknowledge they and their children constituted a family. HACE has stipulated that "[t]he primary policy reason for Defendant HACE's 'family definition' policy embodied in Resolution 1980–1126 is that HACE's Board of Commissioners believes that cohabitation (unmarried adults of the opposite sex living together) is immoral."

---

1. This case comes before me on an application for a preliminary injunction. A hearing was held, and the parties have filed a stipulated record as well as supplemental affidavits. Disposition of the application was postponed pending a ruling on the issue of mootness. I am satisfied that the case is not moot. Plaintiffs have filed an affidavit stating they still seek a Certificate of Participation from defendant. Furthermore, since I find that the parties have

had a full opportunity to litigate the case, and no purpose would be served by a trial, I exercise my discretion under Fed.R.Civ.P. 65(a) to consolidate trial on the merits and the application for a preliminary injunction.

2. A third child was born to the plaintiffs since the inception of this lawsuit.

## DISCUSSION

The task before me is to determine whether defendant's restrictive definition of "family" is permissible. Defendants assert that the spirit of cooperative federalism embodied in USHA empowers PHAs to make their own judgments about what constitutes a family. The plaintiffs argue that the defendants have little authority to set eligibility requirements and, in any case, not enough discretion to define "family" so as to exclude the plaintiffs from participating in low-income housing.

The USHA Declaration of Policy states that the purpose of the Act is to provide housing to "families of low income." 42 U.S.C. § 1437. HUD has promulgated regulations interpreting the word "family":

> *Family.* "Family" includes but is not limited to—(a) An Elderly Family or Single Person as defined in this Part. (b) The remaining member of a tenant family, and (c) A Displaced Person.

24 C.F.R. § 812.2 (1988). The open-ended phrase, "includes but is not limited to," does little to advance the analysis. The definition, however, was not always so vague. HUD once attempted to clarify the ambiguity, but its efforts only resulted in a squabble with Congress.

In 1977 HUD published new regulations defining family which read:

> Family means (1) two or more persons sharing residency whose income and resources are available to meet the family's needs and who are either related by blood marriage or operation of law, or have evidenced a stable family relationship....

24 C.F.R. § 812.2(d)(1) (1977). The regulation became known as the "Stable Family Amendment." Congress felt that this definition went too far in throwing open the doors to subsidized housing, and passed a floor amendment to the HUD appropriations bill for 1978 which effectively over-ruled HUD's interpretation. Defendants argue that this action was a Congressional endorsement of the traditional family definition; however, the House debate does not bear out this contention. Representative Boland who offered the floor amendment stated:

> As I understand it, the Department [HUD] wished to make accommodations for unmarried couples who, in the determination of the local housing authorities, evidenced a so-called stable family relationship. *HUD has found that many such couples, who might not necessarily be considered common-law man and wife for a number of reasons, can create a family situation for children. It would be wrong to deny public housing to such couples. Unfortunately, since promulgation, these regulations have given rise to other interpretations of "stable family relationships," namely homosexual couples.* This development was not contemplated by the Department and poses an issue which it is unprepared to deal with at this time. It is my understanding that the Department would like to reconsider these regulations for that reason. The Committee can accept this approach. The issues of homosexual marriage and rights is just too emotional and sensitive to be thrust upon local public housing authorities without proper consideration by HUD.[3]

123 Cong.Rec. 19076 (1977) (emphasis added).

Thus, even the offeror of the floor amendment recognized that it would be wrong to deny public housing to couples such as the plaintiffs.[4] The real concern prompting the floor amendment was the propriety of granting housing assistance to homosexual couples, a question not before me today.

The legislative history does not support a finding that families *must* be limited to

---

**3.** It was contemplated that HUD would issue new rules after the Congressional disapproval of the Stable Family Amendment; however, those regulations were not forthcoming.

**4.** The offeror was also supported by a representative speaking for the minority party. One oth-er Congressman spoke on the issue. He appeared to take umbrage with the extension of Section 8 assistance to unmarried couples, but his opinion was that of one man only and not a statement of the Congressional will.

traditional families with married parents. However, the defendants also argue that while the traditional family definition has not been mandated, it has also not been proscribed, and that under the discretion granted to PHAs by USHA, HACE has the power to opt for the traditional family test. In essence the defendants argue that they, not a federal court, have the power to interpret the word "family," and any reasonable interpretation they make is valid.

It is certainly true that PHAs were granted broad powers to administer housing programs. The Declaration of Policy of USHA states:

> It is the policy of the United States ... to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income and, consistent with the objectives of this chapter, to vest in local public housing agencies *the maximum amount of responsibility* in the administration of their housing programs....

42 U.S.C. § 1437 (emphasis added).

■ There can be no argument that Congress intended to facilitate the provision of low-income housing by using local authorities that would be more responsive to individual community needs than a uniform and inflexible federal administrator. However, the discretion of local authorities is not unbounded. PHAs must still exercise their authority "consistent with the objectives" of the Act. 42 U.S.C. § 1437. Requirements which are not expressly authorized by Congress cannot be used to exclude persons who are eligible under federal statutes. *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). When the decision of a PHA violates USHA or valid regulations promulgated to effectuate the statute, the Section 8 program no longer illustrates the power of enlightened federalism, but the danger of provincialism. A PHA eligibility requirement will be upheld only if it is "consistent with [HUD] regulations and is in harmony with the overall policies of the Section 8 Housing program." *Vandermark v. Housing Authority of City of York*, 663 F.2d 436, 440 (3rd Cir.1981).

Defendants argue that the enhancement of local power was one of the purposes of USHA, but they put the cart before the horse. The real purpose of the Act was to provide housing to those too destitute to provide it for themselves. That is the mandate of our housing laws, and the authority vested in PHAs like HACE is only a means to that end.

The leading case interpreting the discretion of PHAs to set eligibility requirements in this circuit is *Vandermark*. The Third Circuit Court of Appeals held that PHAs had sufficient discretion to impose a requirement that prospective tenants must pay all past debts to the PHA before being granted a Certificate of Family Participation. The court first determined that PHA's had the power to make their own eligibility requirements based on (1) the policy to vest local public housing agencies with the "maximum amount of responsibility." *Vandermark*, 663 F.2d at 439 (quoting 42 U.S.C. § 1437); (2) a HUD regulation which stated: "If an applicant is determined by the PHA to be ineligible on the basis of income or family composition, *or for any other reason*, the PHA shall promptly notify the applicant...." *Vandermark*, 663 F.2d at 439 (quoting 24 C.F.R. § 882.209(f) (1981)) (emphasis supplied in *Vandermark*); and (3) another HUD regulation which read: "Selecting among eligible applicants those to receive Certificates of Family Participation including *any provisions establishing local requirements for eligibility*...." *Vandermark*, 663 F.2d at 439–440 (quoting 24 C.F.R. § 882.204(b)(1)(i)(c) (1981)) (emphasis supplied in *Vandermark*). From these provisions the court concluded that PHAs had the power to impose their own eligibility requirements. The court then found, over the spirited objection of Judge Gibbons, that the debt rules furthered the USHA directive that PHAs develop sound management programs and rules assuring the prompt collection of debts.

*Vandermark* is distinguishable from the case at bar. First, the regulations which the court relied on expressly contemplated PHA developed eligibility requirements. However, the relevant language has been removed by HUD. Whatever authority PHAs had to fashion eligibility criteria at the time of *Vandermark* has been decreased substantially by the repeal of these regulations. Second, in *Vandermark* the eligibility requirement, payment of debts, was fashioned to further a purpose that was expressly stated in the Act, assuring the prompt payment of debts. HACE does not even pretend that it is furthering any HUD directive. To the contrary, HACE admits that the primary purpose of refusing shelter to cohabitants is that HACE's Board of Commissioners finds cohabitation to be immoral.

Cases in other jurisdictions which have considered similar questions support plaintiffs' position. In *James v. New York City Housing Authority*, 622 F.Supp. 1356 (S.D. N.Y.1985), applicants for public housing in New York City had to verify that their family had a stable composition. Applicants who were living apart from an unrelated adult or family member, but wished to live together in public housing, were categorically denied admission until they lived together for one year.[5] Furthermore, applicants who were living with an unrelated adult or family member, but wished to live apart from that person, had to separate for at least six months before an application would be granted. The court struck down these duration-of-family requirements.

The *James* court found that the PHA had the discretion to promulgate tenant selection criteria which were otherwise not in conflict with the Act. However, the duration-of-family requirements were held to be in conflict with the regulations and case law which disapprove of the categorical denial of benefits.[6] The purpose of the requirements was to avoid fraudulent applications and prevent people in fluid households from applying for public housing and then allowing other individuals to live with them. Although the court recognized that this was a laudable goal, the irrebuttable presumptions used by the PHA were held to be unnecessary to further that goal, and the PHA was ordered to hold individualized hearings on family composition.

The case at bar is an even more compelling one for relief than *James*. In *James* the PHA had a good reason for their eligibility requirement, avoidance of fraud. In this case the reason for the traditional family requirement is the Board of HACE's personal moral code. That is an insufficient rationale to support an eligibility requirement. Furthermore, the *James* court found that a limited duration-of-family requirement of only six months to a year was invalid. Under HACE's interpretation, the plaintiffs will *never* qualify for housing no matter how long they live together.

In addition to *James*, a California court has held that a categorical restriction excluding unmarried couples from low-income housing violates HUD regulations, the Due Process Clause, the Equal Protection Clause, and the right to privacy. *Atkisson v. Kern County Housing Authority*, 59 Cal.App.3d 89, 130 Cal.Rptr. 375 (1976). I do not address the constitutional questions because it would be improper to consider them in light of my holding that defendants' eligibility criteria violates USHA. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). However, the

---

5. It is important to note that there was no dispute that when a stable relationship existed between unmarried adults, that the cohabitants were entitled to housing.

6. The regulations relied on in *James* prohibited categorical limitations in tenant selection criteria, such as the class of unwed mothers or families with children born out of wedlock. 24 C.F.R. § 960.204(c)(1) (1985). There are no regulations prohibiting PHAs from using such criteria under Section 8. However, this does not undercut the strength of *James* for our purposes. The reason there are no such regulations under Section 8 is that tenant selection is left entirely to private landlords. The PHA is only to make an initial determination of eligibility under Section 8. In *James* the relationship between selecting tenants as a landlord and eligibility under USHA was blurred, but that is no reason to ignore the valid conclusion of the court that restrictive definitions of "family" are in violation of the policies of USHA.

policy considerations underpinning *Atkisson*, that irrebuttable presumptions may exclude many worthy recipients of public aid and that such presumptions may prevent natural parents from living with their children, are equally applicable in this case.

In addition to the foregoing, there are several other reasons why HACE's definition must be rejected. First, HUD has recognized that couples with children can often create a positive family situation when unmarried, and as Representative Boland stated in the floor debate surrounding the Stable Family Amendment: "It would be wrong to deny public housing to such couples." Second, it is clear that in some jurisdictions, such as New York and California, housing authorities now routinely allow couples who are cohabitating to participate in low-income housing. *See James; Atkisson*. Third, the defendants' definition is so restrictive it would even exclude common-law relationships that are recognized under state law as the equivalent of more traditional marriages. Finally, empirical evidence demonstrates that it would be unreasonable to exclude unmarried couples from subsidized housing. According to the affidavit of an expert sociologist, there were 2.2 million couples living together in 1986. Approximately 30% or 660,000 of these couples lived with children. Cohabitation is also slightly more likely among those in the lower to lower middle economic classes. Allowing PHAs to exclude such a large group of people from rental assistance would be unconscionable. It could not have been the intent of Congress to deny these individuals and their innocent children access to the safe and sanitary housing promised by USHA.

I hold today that the practice of categorically excluding unmarried couples from eligibility for low-income housing programs violates USHA. The defendants cannot arbitrarily exclude all applicants who are not related by blood, marriage or adoption from low-income housing. They are required to make individual determinations concerning whether applicants constitute a family unit.

With respect to the plaintiffs in this action, it is clear that they are entitled to family status. The plaintiffs are unmarried but have three natural children. Ms. Hann currently lives with Mr. Webster's mother and would move here with Mr. Webster if they could obtain housing. The only thing missing is a marriage certificate. The defendants assert that one of the policies of USHA was to support "families" in the traditional sense. Whatever force that policy has is strongly outweighed by the primary purpose of the Act which is to shelter the poor.

Defendants' moral vision of the world is hampered by their shortsightedness. While I, like the defendants, certainly endorse traditional concepts of marriage and family, the defendants have failed to consider the wider implications of their policy on the children of the poor. It would be a bizarre world where the refusal of the parents to get a marriage certificate condemns the children to a life of homelessness. Whether it is moral or immoral, wise or unwise, for the parents to spurn marriage, I cannot allow the sins of the parents to be visited upon their children.