**Edith A. MILES, on behalf of herself and others similarly situated, Plaintiff–Appellee,**

v.

**METROPOLITAN DADE COUNTY, Defendant–Appellant.**

**Edith A. MILES, on behalf of herself and others similarly situated, Plaintiff–Appellee, Cross–Appellant,**

v.

**METROPOLITAN DADE COUNTY, Defendant–Appellant, Cross–Appellee.**

Nos. 89–5418, 89–5717.

United States Court of Appeals, Eleventh Circuit.

Nov. 9, 1990.

Robert A. Ginsburg, Thomas H. Robertson, Valerie L. Rennert, Miami, Fla., for defendant-appellant.

Peter H. Barber, Legal Aid Services of Browar City, Inc., Miami, Fla., for plaintiff-appellee.

Before CLARK and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

Edith Miles brought this 42 U.S.C. § 1983 action against Metropolitan Dade County alleging that the County's actions in charging public housing tenants court costs charges regardless of the outcome of eviction proceedings violate the Constitution and the Brooke Amendment to the United States Housing Act of 1937, 42 U.S.C. § 1437a.[1] The district court granted Miles's motion to certify the case as a class action brought by all past, present and future tenants who had been charged court costs despite the fact that eviction proceedings brought against them were dismissed or otherwise settled without a judicial award of court costs. The court then granted summary judgment in favor of the plaintiffs on both the plaintiffs' procedural due process claim and the plaintiffs' statutory claim. Subsequently, the court entered an award of attorney fees to the plaintiffs as prevailing parties under 42 U.S.C. § 1988. The defendants appeal all three of these rulings.[2] After considering the arguments advanced by the defendants, we affirm.

## BACKGROUND

The district court granted the plaintiff's motion to have the class certified after finding that the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R. Civ.P. 23(b)(2). The defendants opposed class certification, arguing that the class

---

**1.** The complaint alleged the following four grounds: (1) a violation of the Fifth Amendment takings clause; (2) a violation of the plaintiff's right to procedural due process under the Fourteenth Amendment; (3) a violation of the plaintiff's right to substantive due process under the Fourteenth Amendment; and (4) a violation of the Brooke Amendment.

**2.** Case number 89–5418 is the appeal of the class certification and the summary judgment orders. Case number 89–5717 is the appeal of the attorney fee award. This court consolidated these cases on August 25, 1989.

definition included class members who were not entitled to relief. The court, however, did not specifically address this argument.

The parties then agreed to have the district court determine the plaintiffs' summary judgment motion on the following stipulation of facts:

Plaintiff Edith Miles is a citizen of the United States and a resident of Dade County, Florida. She is a 73 year old widow who resides by herself in a public housing unit owned and operated by defendant (hereinafter Dade County or DCHUD). She has resided in Dade County public housing at least since 1974.

On August 16, 1986 Miles was served with a summons and complaint for removal of a tenant filed by Dade County in County Court. The eviction action against Miles was without merit and Dade County could not, as a matter of law, have prevailed in the action. On October 3, 1986 Dade County filed a unilateral voluntary dismissal of the eviction action without receiving an award of costs.

On her November 1986 rent statement Miles was billed $41.50, the amount of the filing fee. The bill was the first notice to Miles that she was expected by DCHUD to pay the court costs. The bill itself contained no notice of a right to challenge the court costs. Miles received no other notice of a right to challenge the court cost charges.

Upon receipt of the bill Miles went to the office of the project manager to complain that she did not owe the bill. She was told by the project manager or his designee that she must pay the charge or be subject to eviction for non-payment of rent.

At all times (up until April 27, 1987) it was the policy and practice of defendant to bill, and collect, court cost charges from tenants for eviction actions even though the particular eviction action was dismissed or settled without an award of court costs. A tenant who did not pay the court cost charge after being billed would be subject to eviction for non-payment of rent. Defendant no longer adheres to this policy and no longer bills tenants for court costs without judicial award.

The class (all tenants, past or future, charged for court costs without a judicial award) is so numerous that joinder of all members is impracticable. (There are over 3,000 tenants in the past who have been billed for court costs without a court order.)

Various project managers of DCHUD would testify that as a matter of general practice they orally informed tenants that they would be billed for court costs at the time the project managers accepted rent from such tenants after the particular eviction action was commenced. There was no written policy requiring project managers to inform tenants. It is impossible to know how many tenants were so orally informed. The project managers do not recall any specific tenants who were so informed. Project managers did not make written documentation if they so orally informed a tenant.

The decision to bill tenants for court costs was an automatic administrative function. All tenants against whom an eviction action was filed were automatically billed for court costs.

Dade County has a record of all tenants who had been billed for court costs and the amount of each such billing.

When a tenant is billed for court costs the tenant does not receive notice of a right to file a grievance or to challenge the imposition of that charge. The only written notification of the court cost charge is a line on the tenant's regular monthly rent statement.

The court cost charges to tenants, if deemed rent violate the rent ceilings imposed by the Brooke Amendment to the United States Housing Act of 1937.

The named plaintiff, Edith Miles, was entitled to relief in this case—restitution of the $41.50 she paid in court cost charges. Plaintiff received a rent credit

in April of 1988 covering the reimbursable amount.

R.1–84 at 2–4.

Based on this stipulation, the plaintiffs moved for summary judgment on the claims of a *substantive* due process violation and a Brooke Amendment violation. The district court granted the motion on the basis of plaintiffs' *procedural* due process and Brooke Amendment claims. After granting summary judgment, the court entered an injunction ordering the County to issue rent credits to all class members who remained Dade County tenants and to refund the money collected from those class members who are no longer tenants.[3] Finally, the court ordered the defendant to pay the tenants' attorney fees in the amount of $12,437.50 and costs in the amount of $1,321.73.

The defendant appeals all three of these orders—class certification, summary judgment, and attorney's fees. The plaintiffs, although dismissing their cross appeal, argue that the district court's decision can also be affirmed on the basis of the substantive due process claim. Because we find that the County's policy violates the Brooke Amendment, we decline to address the constitutional claims. In addition, since the appeal on the issue of attorney's fees was based solely on the County's argument that the plaintiffs' improperly prevailed, our affirmance on the merits requires us to affirm the award of attorney fees.

## DISCUSSION

### A. *The Brooke Amendment*

As amended, the Brooke Amendment to the Housing Act of 1937 (the "Act") provides:

(1) ... [A] family shall pay as rent for a dwelling unit assisted under this chapter ... the highest of the following amounts, rounded to the nearest dollar:

(A) 30 per centum of the family's monthly adjusted income;

(B) 10 per centum of the family's monthly income; or

(C) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

42 U.S.C. § 1437a(a)(1) (Supp. V 1987).

In support of its conclusion that the County's court costs charge policy violates the Brooke Amendment, the district court reasoned that the court costs charges amount to rent within the meaning of the Brooke Amendment because the County added the charges to the tenants' rent and would move to evict tenants "for nonpayment of rent" if the charges were not paid. The court then granted summary judgment to the tenants on their Brooke Amendment claim pursuant to the parties' stipulation that if the court costs charges amount to rent within the meaning of the Brooke Amendment, the County's policy violates the Brooke Amendment. The defendant challenges the district court's finding that the court costs charge amounts to rent and argues that a court costs charge is a proper charge not subject to the Brooke Amendment limits. In addition, the County argues that the fact that the charge is made as the result of eviction proceedings does not make it rent under the Act. The plaintiffs, on the other hand, argue that unauthorized court costs charges are not excluded from the Brooke Amendment limitations.

The Brooke Amendment itself does not define rent. However, the Department of Housing and Urban Development ("HUD") regulations promulgated under the Act define "tenant rent" as "[t]he amount payable monthly by the Family as rent to the [Public Housing Authority]." 24 C.F.R. § 913.102 (1989). "Tenant rent" is calculated by taking "total tenant payment" and

---

**3.** Because the County abandoned the practice, the Class definition was amended to delete reference to future tenants.

subtracting any applicable "Utility Allowance." *Id.* For all tenants, "total tenant payment" does not include "charges for excess utility consumption or other miscellaneous charges (see section 966.4 of this chapter)." *Id.* Therefore, the question in this case is whether court costs are not included in the calculation of tenant rent because they are "other miscellaneous charges" within the meaning of 24 C.F.R. § 913.102.[4]

The term other miscellaneous charges is not defined by the regulations. Because section 913.102 makes a parenthetical reference to section 966.4, we turn to that provision to determine which charges are "miscellaneous charges." Section 966.4 contains several items that a Public Housing Authority ("PHA") is permitted to charge its tenants in addition to their monthly rent. Permissible charges include: excess utilities fees, excess damage fees, late payment penalties, and security deposits. 24 C.F.R. §§ 966.4(b)(2), 966.4(b)(3) (1989). Section 966.4 makes no mention of court costs charges.

The County takes the position that the reference to section 966.4 in section 913.102 is meant to provide only an illustrative list of "miscellaneous charges" rather than an exhaustive one, but cites no authority for this proposition. Instead, the County argues that other provisions in the regulations presuppose that court costs charges are permissible. In particular, the County points to section 966.6(h), which provides:

> [Tenant leases shall not include a provision] that the tenant agrees to pay attorney's fees or other legal costs whenever the landlord decides to take action against the tenant even though the court determines that the tenant prevails in the

action. Prohibition of this type of provision does not mean that the tenant as a party to the lawsuit may not be obligated to pay attorney's fees or other costs if he loses the suit.

24 C.F.R. § 966.6(h) (1989).

■ Thus, while section 966.6(h) prohibits lease provisions that allow a PHA to charge court costs whenever the PHA decides to take legal action against the tenant, that section explicitly allows the tenant to be "obligated to pay attorney fees or other costs if he loses the suit." Section 966.58 requires that a PHA notify the tenant in writing that "he may be required to pay court costs and attorney fees" if he fails to vacate the unit after receiving proper notice. The County argues that these provisions contemplate that under some circumstances a court costs charge is allowed. We agree that the fact that the regulations contemplate court costs charges in some instances forecloses an interpretation of the regulations that would totally prohibit a PHA from collecting court costs charges. Nevertheless, it is possible to recognize that court costs charges are permissible without approving the defendant's policy of automatically charging court costs whenever it brings suit. After considering the competing arguments, we conclude that while the regulations prohibit the PHA itself from imposing court cost charges on the tenant, they do not prohibit the PHA from collecting the charge when it is imposed by a court.

This interpretation is supported by several of the regulations. Section 966.6(h) prohibits a PHA from requiring tenants to agree to pay attorney's fees or court costs when the tenant prevails in legal actions

---

**4.** The district court treated the court costs charge as rent because "if the tenant[s] failed to pay [the court costs charge,] they were evicted for non-payment of rent." District Court Opinion at 17. The plaintiffs had argued below that both federal and state law provide different procedures for eviction for non-payment of rent than for breach of other lease terms. *See* 42 U.S.C. § 1437d(*l*)(3) (Supp. V 1987) (PHA must give 14–day notice for termination of lease for failure to pay rent but must give 30–day notice for other causes); 24 C.F.R. § 966.4(1) (1989) (same). Apparently, the County was using the

procedures for evicting a tenant who did not pay rent when the court costs charges were not paid. Even if the County's use of these procedures was incorrect, this fact does not transform a miscellaneous charge into rent. The regulations explicitly separate tenant charges into two categories—miscellaneous charges not subject to the 30% limitation and rent charges included in the 30% income limits. These explicit regulations imply that the drafters did not intend to give the PHAs discretion to decide whether a particular charge is "rent."

taken by the PHA against the tenant. However, section 966.6(h) allows a PHA to require tenants to agree to pay attorney's fees or court costs whenever the tenant *loses* in a legal action brought by the PHA. As this section makes clear, the County could not have included a provision in the tenant's lease allowing it to collect court costs simply as the result of its filing suit against the tenant. Instead, section 966.6(h) evidences an intent by HUD to allow the imposition of a court costs charge *only* when the PHA receives a court judgment against the tenant assessing costs. Therefore, the County's automatic imposition of court costs charges upon the filing of suits against tenants is prohibited by section 966.6(h).

The County also argues that the addition of court costs charges to a tenant's bill does not increase the tenant's "rent" because "rent" under the Brooke Amendment is generally defined as the compensation paid by a tenant for the use of land. *See Peterson v. Oklahoma City Housing Authority*, 545 F.2d 1270, 1274 (10th Cir.1976) (citing cases). Therefore, court costs charges are properly treated as "other miscellaneous charges" within the meaning of section 913.102. While we are generally in agreement with the County's definition of "rent," in *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 430 & n. 11, 107 S.Ct. 766, 774 & n. 11, 93 L.Ed.2d 781 (1987), the Supreme Court recognized that HUD's regulations implementing the Brooke Amendment are entitled to deference by the courts. Given that HUD has enacted a comprehensive regulatory scheme to determine when a tenant charge is rent under the Brooke Amendment, we are reluctant to find that a charge is excluded from the Brooke Amendment limitations unless that charge is explicitly included in § 966.4(b). In *Wright*, the Court noted that the purpose of the Act is "to provide affordable housing for low-income people." *Id.* at 420, 107 S.Ct. at 769. It is because the Court found that the "intent to benefit tenants is undeniable," that it held that the limitations found in the Brooke Amendment and the HUD regulations constitute rights enforceable under section 1983. *Id.* at 430, 107 S.Ct. at 774.

■ In addition, since state law allows the recovery of court costs from the tenant only after a "judgment or decree" has been entered in the landlord's favor, it provides no authority for the County's actions. *See* Fla.Stat.Ann. § 83.48 (West 1987). We note that parties in both state and federal courts are required to bear their own court costs absent an order from the court to the contrary. *See* Fed.R.Civ.P. 54(c) (costs to be taxed in favor of prevailing party by the clerk subject to review by court); Fla.Stat. Ann. § 57.041(2) (West 1969) ("Costs may be collected by execution on the judgment or order assessing costs."). Thus, we can find no explicit authority for the County's automatic charge.

■ Finally, we reject the argument that the tenants' consent to the charge allows the county to collect it. First, we note that section 966.6(h) forbids an "*agree[ment]* to pay attorney's fees or other legal costs whenever the landlord decides to take action against the tenant." The clear purpose of the regulation relating to permissible tenant charges is to restrict the types of agreement that a PHA and its tenants can make. In addition, the stipulation establishes that the County cannot show which or how many tenants "consented" to the charge. Finally, even if the tenants did consent, the consent was in the face of a threatened eviction. The Second Circuit has recognized the coercive nature of such a threat:

> Nor is it persuasive ... to argue that a tenant may challenge the additional rent charges by refusing to pay them and by defending in court against the PHA's suit for nonpayment of rent. The cost of defending in court and the hazards envisioned by a public housing tenant in refusing to pay rent, would probably dissuade all but the boldest tenant from contesting an 'additional rent' charge in this manner.

*Escalera v. New York City Housing Authority*, 425 F.2d 853, 864 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27

L.Ed.2d 91 (1970). It would be inconsistent with the purpose of the Act and the regulations to allow the tenants to "consent" to a charge that the County is not authorized to impose. Thus, we hold that court costs charges are not authorized charges that a PHA itself may impose on a tenant; and therefore, the charges are not excluded from the Brooke Amendment limits as "miscellaneous charges." The County may, however, recover court costs imposed by a court against a tenant as the losing party in an action brought by the County.

### B. *Class Certification*

■ The defendant also challenges the district court's actions in certifying this case as a class action. The County argues that because some of the tenants were delinquent in their rent, the eviction actions brought against them were legitimate. Therefore, it was proper for the county to collect court costs when these tenants settled their eviction actions and agreed to pay both the back rent and the court costs charges. Based on this argument that some of the class members are entitled to relief and others are not, the County seeks to have the class certification reversed. Additionally, the County argues that the fact that some of the class members agreed to the charge shows that they may object to class action, thereby creating a conflict among the class members.

The County is correct in arguing that class certification is improper when the class includes either a group with a large number of members who are not entitled to relief or a group with members who disagree about the propriety of relief. The claims of a class representative must be typical of the claims of the class. Fed.R. Civ.P. 23(a)(3). In addition, class conflicts may defeat an otherwise proper class. In *Peterson v. Oklahoma City Housing Authority*, 545 F.2d 1270 (10th Cir.1976), the court affirmed the district court's refusal to certify a class of public housing tenants when there was a disagreement among the class members over the desirability of the security deposit requirement being challenged by the class representatives. *Id.* at 1273.

The County's arguments fail, however, because these settled principles are inapplicable in this case. The class as currently certified by the district court consists of all past and present tenants who have been charged court costs despite the fact that eviction proceedings brought against them were dismissed or otherwise settled without *judicial imposition* of court costs. As we have noted above, the court costs charges imposed *by the County* violate HUD's Housing Act regulations because a PHA has no authority to bill a tenant for court costs when no judgment has been entered imposing the charge on the tenant. Thus, the fact that the eviction actions brought against some class members were meritorious is irrelevant, as no court costs were imposed by a *court* against any class member. Additionally, unlike the situation in *Peterson*, the County has shown no evidence that some members of the class oppose the action, and we cannot see any realistic possibility that a conflict exists.[5] *See Horton v. Goose Creek Ind. School Dist.*, 690 F.2d 470, 485–86 (5th Cir.1982) (conflict can exist in class action (1) when record shows hard evidence of actual disagreement or (2) when class is such that court can imply that "a realistic possibility of antagonism" exists), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). The class certification was not an abuse of discretion.

### CONCLUSION

We affirm the district court's grant of summary judgment to the plaintiffs on the grounds that the County's actions violated the Housing Act regulations. In addition, we find no error in the certification of this case as a class action. The judgment of the district court is therefore AFFIRMED.

---

**5.** Indeed, the action does not harm the tenants in any manner. Any tenant who "agreed" to pay the unauthorized charge did so under the threat of eviction. Under these circumstances, we see no realistic possibility that such tenants would oppose this action to recover the unauthorized charge.

COX, Circuit Judge, concurring in part and dissenting in part:

I concur in the result reached by the majority to the extent that they find illegal the billing of court costs to tenants against whom eviction actions were *improperly* brought. I find it unnecessary to consult either the Brooke Amendment or HUD regulations to reach this conclusion. No one suggests that there is a provision in the lease that would permit Dade County to *improperly* sue its tenant for eviction and then bill the tenant for court costs. In the absence of such a provision in the lease, there would appear to be no basis under Florida landlord and tenant law for Dade County to bill the tenant for court costs.

Dade County contends, however, that there are two groups of tenants in the class: one group against whom eviction actions were *properly* brought and another group against whom eviction actions were *improperly* brought. Dade County further argues that those tenants against whom eviction actions were *properly* brought are not entitled to relief under the Brooke Amendment and HUD regulations. I agree, and to the extent that the majority opinion holds otherwise, I respectfully dissent. The class, as defined, includes tenants against whom eviction actions were *properly* filed and from whom rent was thereafter accepted, with the tenants consequently being billed for court costs. Stated otherwise, the class definition includes defaulting tenants allowed to "cure" their default and pay court costs actually incurred by Dade County in the eviction proceedings. Permitting such tenants to "cure" defaults in this way does not, in my view, violate either the Brooke Amendment or HUD regulations. Neither the Brooke Amendment nor HUD regulations explicitly address this issue.

The plaintiff, responding to Dade County's contention that the class includes tenants against whom eviction actions were *properly* brought, presents two argu-

ments. First, the plaintiff argues that the stipulation does not refer to any tenants who were delinquent in their rent payments or otherwise in default. The stipulation is indeed silent on this subject, and from it we learn only that one tenant—the plaintiff Miles—had an eviction action filed against her that was without merit. We are left to speculate about how many members of the plaintiff class are in one group and how many are in the other. The problem with the plaintiff's argument—that the stipulation does not tell us who of these several thousand tenants had eviction actions properly filed against them—is that it would require the defendant to prove how many members of the plaintiff class are *not* entitled to relief. This misplaces the burden of proof. In a case where *all* members of the plaintiff class have received relief, it is not sufficient for the plaintiff to say that the defendant has not proved how many members of the class are *not* entitled to relief.

The plaintiff's second argument is that the stipulation does not prove that there were any settlement agreements that included an agreement to pay court costs. While that is true, the class includes all past and present tenants who have been charged court costs despite the fact that eviction proceedings brought against them were dismissed or otherwise settled without judicial imposition of court costs.[1] Again, the plaintiff misplaces the burden of proof. Since the class includes tenants who settled, it is the plaintiff's burden to establish entitlement to relief.

Where eviction proceedings have been properly initiated against a tenant, I find nothing in the Brooke Amendment or HUD regulations that prohibits the amicable disposition of the eviction action under terms that call for the defaulting tenant to pay court costs. The majority no doubt mean well, but I fear that the result in this case may discourage the termination of litigation. If in the future Dade County wants to collect court costs necessarily and legitimately incurred, it may well say "see you

---

1. The complaint as last amended alleges that this is an action "challenging defendants' policy and practice of charging tenants for court costs as a result of eviction actions even though the eviction action was *dismissed* or *compromised* without an award of court costs." (Emphasis added.)

in court" to a tenant who wants to cure a default. If it does, it is clear under HUD regulations that it can then collect judicially imposed court costs. *See* 24 C.F.R. § 966.6(h) (1989).